Mark L. Javitch (CA SBN 323729)
JAVITCH LAW OFFICE
480 S. Ellsworth Ave
San Mateo, CA 94401
Telephone: 650-781-8000
Facsimile: 650-648-0705
mark@javitchlawoffice.com
*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLISON L. JAVITCH,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>SILVERLINE HOME REMODELING INC., DBA SILVERLINE SOLAR, a California Corporation, SIMPLY SOLAR, a California Corporation, EQUISOLAR, INC., a California Corporation, JOHN DOES 1, an unknown business entity,<br><br>　　　　　　Defendants. | Case No.: 3:19-cv-04794<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

1.  Plaintiff ALLISON L. JAVITCH ("Plaintiff") brings this Complaint and Demand for Jury Trial against Defendants SILVERLINE HOME REMODELING INC., DBA SILVERLINE SOLAR, ("Silverline") SIMPLY SOLAR, ("Simply") EQUISOLAR, INC., ("Equisolar") and Defendant JOHN DOE 1 ("John Doe 1"), (together, "Defendants") to stop their illegal practice of making unauthorized calls that play prerecorded voice messages to cellular telephones.

1

**NATURE OF THE ACTION**

2. In the course of selling solar panels, on behalf of Silverline, Simply and, Equisolar, their agent John Doe 1, placed calls employing a prerecorded voice message to Plaintiff's cell phone.

3. However, Defendants did not possess express written consent prior to placing these calls and, are therefore in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

4. Congress enacted the TCPA in 1991 to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

5. The TCPA targets unauthorized calls exactly like the ones alleged in this case, based on Defendants' use of technological equipment to spam consumers with its advertising on a grand scale.

6. By placing the calls at issue, Defendants have violated the statutory rights of Plaintiff.

7. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted) ("the FCC Letter").

## PARTIES

8. Plaintiff ALLISON L. JAVITCH is a natural person and is a citizen of the Northern District of California.

9. Defendant Silverline is a corporation organized and existing under the laws of the State of California with its principal place of business at 21410 Chase Street #4, Canoga Park CA 91304.

10. Defendant Simply is a corporation organized and existing under the laws of the State of California with its principal place of business at 1740 Corporate Circle, Petaluma, CA 94954.

11. Defendant Equisolar is a corporation organized and existing under the laws of the State of California with its principal place of business at 16530 Ventura Blvd., Ste. 104, Encino, CA 91436.

12. Defendant John Doe 1 is an unknown business entity.

## JURISDICTION AND VENUE

13. This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

14. This Court has specific personal jurisdiction over Defendants because Defendants purposefully directed their sales efforts into California by making automated phone calls into California, including to Plaintiff, a California resident, who answered the calls while she was in California, the calls being the incident from which this lawsuit directly arose.

15. This Court also has general jurisdiction over Silverline, Simply, and Equisolar because they are California Corporations with their principal places of business also in California.

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendants principally do business and regularly call and transact business in the State of California and in this District, including the wrongful conduct giving rise to this case, which occurred substantially in this District.

# FACTUAL ALLEGATIONS

17. Defendants Silverline, Simply and Equisolar sell electricity-generating solar panels for residential homes.

18. Defendant John Doe 1 is an unknown business entity.

19. To increase their sales of solar panels, Silverline, Simply and Equisolar hired Defendant John Doe 1 to market their products.

20. On behalf of Silverline, Simply, and Equisolar, John Doe 1 placed calls using prerecorded voice messages to Plaintiff.

21. On July 1, 2019, Plaintiff received 5 telephone calls to her cellular telephone ending in 8902 from the number (650) 387-1750 at 9:28 AM, 9:38 AM, 10:02 AM, and 10:29 AM.





22. Plaintiff never consented to receive calls from Defendants. Plaintiff had no previous relationship with Defendants or knowledge of them prior to this incident.

23. After receiving three calls, Plaintiff finally answered the fourth call at 10:13 AM and the fifth call at 10:29 AM. Both times, Plaintiff heard a prerecorded message from "Lisa" offering to provide "solar solutions" to "qualified homeowners." In order to identify the caller, Plaintiff followed the instructions of the prerecorded voice message and answered the automated survey. Plaintiff knew

this survey was automated because "Lisa" would respond with a nonresponsive answer to Plaintiff and/or ignore Plaintiff's response altogether and continue with the survey questions.

24. Following the automated survey and several "beeps," Plaintiff was then connected with a live representative for Defendant John Doe 1.

25. The representative from John Doe 1 went through the same questions as the automated survey, including asking Plaintiff's home address.

26. Plaintiff asked the representative the name of the company he worked for, but he did not answer.

27. The representative from John Doe 1 informed Plaintiff that it would soon call to follow up with Plaintiff again.

28. On July 2, 2019, Plaintiff received a telephone call from Defendant Simply. Defendant Simply informed Plaintiff that it was following up on its previous call regarding solar panels.

29. Defendant Simply then sent an email to Plaintiff to solicit a home solar consultation.

From: _____@simplysolarcalifornia.com>
Date: July 2, 2019 at 10:57:31 AM PDT
To: allison.pascal@gmail.com
Subject: Times for Free at Home Solar Consultation

Hi Allison,

It was great speaking with you a few moments ago. Below I am leaving a span of time that we currently have free in-home solar consultations. Let me know what time would work best for you, and I can give you a call back to confirm the appointment is still available & ask a few qualifying questions.

Next Saturday, July 16th we currently have openings for solar consultations between 9 am and 6 pm.

Let me know if you are available that day, if not if there is another day and time that is preferable let me know, and I can give you a call back to confirm. The only days we are not open are holidays and Sundays. This will be the most efficient way to go about things.

Best,

__ | Simply Solar
Sales Development Representative
_____@simplysolarcalifornia.com
www.simplysolarca.com
o: (707) 285-7037



Your world. Powered by sunlight.
Click to request a consultation

30. Also, on July 2, 2019, Plaintiff received a text message from Defendant Silverline which was "confirming [Plaintiff's] appointment for tomorrow at 6 PM for solar."



31. On July 3, 2019, Plaintiff received a call from Equisolar at the number 469-312-5418. Defendant Equisolar informed Plaintiff that it was following up on its earlier call regarding solar panel installation.

**BASIS FOR LIABILITY: DIRECT LIABILITY**

32. By structuring their businesses with a hidden party performing robocalling to promote their services, Silverline, Simply and Equisolar have effectively outsourced their illegal robocalling to a third-party.

33. But this is not a basis for avoiding liability. There is no way to identify John Doe 1 at this stage, other than through the records of Silverline, Simply and Equisolar.

34. On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers may not avoid liability by outsourcing telemarketing:

[A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief.  As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

## AGENCY ALLEGATIONS

35. The May 2013 FCC Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id*. at 6587 n. 107.

36. Prior to conducting discovery in this litigation, due to the anonymous nature of robocalling, Plaintiff has no way to identify Defendant John Doe 1 or the exact party who called her phone.

37. However, for the purposes of TCPA liability, Plaintiff is not expected to know this information at the pleading stage.

38. The May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id*. at 6592-593 (¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id*. at 6593 (¶ 46).

39. Even if Defendants Silverline, Simply and Equisolar allege that they did not personally make the TCPA-violating calls, Defendants Silverline, Simply and Equisolar are liable for Defendant John Doe 1's actions if it took steps to cause the calls to be made, or if the calls were made pursuant to Defendants Silverline, Simply and Equisolar's actual authority, apparent authority and/or ratification, or pursuant to joint enterprise or acting in concert liability.

### BASIS FOR LIABILITY: ACTUAL AUTHORITY

40. Defendants Silverline, Simply and Equisolar authorized John Doe 1 to generate prospective customers. Defendants' integration of robocalling into its sales process was so seamless that it appeared to an outside party like Plaintiff that John Doe 1 was the telemarketing department of Defendants Silverline, Simply and Equisolar.

41. But apparently, John Doe 1 was an outside firm that Defendants hired, which permitted Defendants Silverline, Simply and Equisolar to enjoy the benefits of mass robocalling while moving the illegal activity "outside their purview."

42. Accordingly, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

43. In their January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id*. (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

44. More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for

telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

45. Silverline, Simply and Equisolar manifested to John Doe 1 that they wanted John Doe 1 to recruit particular types of customers for them on a large scale.

46. John Doe 1 accepted the undertaking.

47. There was an understanding that Silverline, Simply and Equisolar controlled John Doe 1 by specifying the criteria of potential customers that would be most profitable for Defendants to sell to after they had been robocalled.

48. Silverline, Simply and Equisolar each confirmed they were soliciting Plaintiff pursuant to the robocall.

49. Upon information and belief, Defendants requested that John Doe 1 enter the names and telephone numbers into its customer relationship manager software of the people who were robocalled and expressed interest in Defendants' solar panels.

50. Upon information and belief Defendants required that John Doe 1 format its robocalling results into a format to be directly imported into Defendants' customer relationship manager system so that their Salespeople could make follow up solicitations to the robocall victims.

**BASIS FOR LIABILITY: APPARENT AUTHORITY**

51. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the

unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 FCC Rcd at 6592 (¶ 46).

52. Silverline, Simply and Equisolar authorized John Doe 1 to generate prospective customers for them.

53. The integration of their sales efforts with robocalling by Silverline, Simply and Equisolar used was so seamless that it appeared to Plaintiff from the email and calls she received that John Doe 1 was one and the same company with Silverline, Simply and/or Equisolar.

54. Silverline, Simply and Equisolar all confirmed that they were continuing the sales process first initiated by John Doe 1's robocalling.

55. Plaintiff reasonably believed and relied on the fact that John Doe 1 had received permission and instructions to conduct activity on their behalf by Silverline, Simply and Equisolar gave.

## BASIS FOR LIABILITY: RATIFICATION

56. Silverline, Simply and Equisolar knowingly and actively accepted business that originated through the illegal robocalls placed by John Doe 1.

57. By accepting these contacts, Defendants Silverline, Simply and Equisolar "manifest[ed] assent or otherwise consent[ed] . . . to act" on behalf of John Doe 1, as described in the Restatement (Third) of Agency.

58. Silverline, Simply and Equisolar ratified John Doe 1's TCPA violations by knowingly accepting the benefit of a potential new customer entered into their computer databases, despite that these records were generated illegally.

59. Defendants took advantage of the violations by having their salespeople solicit the prospective customers while turning a blind eye to the way the potential customer was identified.

60. Defendants ratified John Doe 1's TCPA violations by being willfully ignorant of the violations or by being aware that such knowledge was lacking.

61. Silverline, Simply and Equisolar ratification caused John Doe 1 to have the actual authority of Silverline, Simply and Equisolar. Restatement § 4.01 cmt. b.

## BASIS FOR LIABILITY: JOINT ENTERPRISE

62. Silverline, Simply and Equisolar each had a tacit agreement or approved of after the fact with John Doe 1 for the sale of their products pursuant to John Doe 1's illegal robocalls.

63. Defendants were part of a common enterprise and had a community of interest in selling solar panels.

64. Defendants had an equal right to control the conduct thereof by specifying the type of people to be called and the questions that should be asked to people that were robocalled.

65. Defendants had a duty to exercise due care when marketing their products.

66. John Doe 1's violation of the TCPA is negligence per se.

67. Because of John Doe 1's negligence, Plaintiff suffered damage.

68. Silverline, Simply and Equisolar are joint and severally liable for the resulting damage caused by John Doe 1.

## BASIS FOR LIABILITY: ACTING IN CONCERT

69. Silverline, Simply and Equisolar acted in concert with John Doe 1 when they arranged to solicit the people that were identified pursuant to John Doe 1's illegal robocalls.

70. Defendants were part of a common design to robocall consumers and then sell them solar panels.

71. Defendants had a tacit understanding that John Doe 1 was robocalling in violation of the TCPA.

72. Silverline, Simply and Equisolar knew that John Doe 1's conduct was a breach of duty to Plaintiff.

73. Silverline, Simply and Equisolar gave John Doe 1 substantial assistance in accomplishing the tortious result, including compensating John Doe 1 for generating customers pursuant to robocalls and giving instructions on how to represent them and what to ask the people that had been robocalled.

74. Silverline, Simply and Equisolar furthered the tortious conduct by their cooperation and request, and lending aid to John Doe 1, and adopting John Doe 1's acts for their own benefit.

75. Silverline, Simply and Equisolar's own conduct constitutes a breach of duty to Plaintiff.

76. Plaintiff's injury is indivisible.

77. All Defendants acted tortiously and the harm resulted from the robocalling of John Doe 1.

78. Silverline, Simply and Equisolar are joint and severally liable for the resulting damage caused by John Doe 1.

**FIRST CAUSE OF ACTION**
Willful and/or Knowing Violation of 47 U.S.C. § 227
Telephone Consumer Protection Act of 1991
(Against all Defendants)

79. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

80. Defendant John Doe 1, the agent of Silverline, Simply and Equisolar, placed calls to Plaintiff's cellular telephone for the purpose of advertising Defendants' solar panel products and services.

81. Plaintiff never consented to receive calls from Defendants. Plaintiff had no relationship with Defendants.

82. The calls were made for the purpose of soliciting Defendants' solar panels.

83. When Plaintiff answered, Plaintiff heard a prerecorded voice message as proscribed by 47 U.S.C. § 227(b)(1)(A)(iii).

84. As a result of its unlawful conduct, Defendants caused damages under 47 U.S.C. § 227(b)(3)(B), entitling Plaintiff to recover $500 in civil penalties and an injunction requiring Defendants to stop their illegal calling.

85. Not only did Defendants violating the TCPA, it did so "knowingly" and/or "willfully" under 47 U.S.C. § 227(b)(3)(C).

86. If the court finds that Defendants willfully or knowingly violated this subsection, the court may exercise its discretion to increase the amount of the award from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

87. Silverline, Simply and Equisolar are liable for John Doe 1's violations through the vicarious liability principles pled herein.

## SECOND CAUSE OF ACTION
Violation of Cal. Civ. Code §1770(a)(22)(A)
California Consumers Legal Remedies Act
(Against all Defendants)

88. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

89. Cal. Civ. Code §1750, et seq., California's Consumer Legal Remedies Act, prohibits a specific list of 27 unfair business practices.

90. Cal. Civ. Code §1770(a)(22)(A) prohibits "[d]isseminating an unsolicited prerecorded message by telephone without an unrecorded, natural voice first informing the person answering the telephone of the name of the caller or the organization being represented, the address or the telephone number of the caller, and without first obtaining the consent of that person to listen to the prerecorded message."

91. Defendant John Doe 1, the agent of Silverline, Simply and Equisolar, violated Cal. Civ. Code §1770(a)(22)(A) by playing a prerecorded voice message to Plaintiff's cell phone without first asking for her consent with a natural voice.

92. Silverline, Simply and Equisolar are liable for John Doe 1's violations through the vicarious liability principles pled herein.

93. Consumers who suffer damage due to an unlawful business practice may bring an action to enjoin a corporation's unlawful business practices throughout the state on behalf of the general public.

94. Plaintiff is entitled to injunctive relief and attorney's fees.

### THIRD CAUSE OF ACTION
Negligence / Negligence Per Se
(Against all Defendants)

95. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

96. Defendants had a duty while soliciting customers to make sure that their prospects and customers were not called pursuant to illegal robocalling.

97. As set out above, Defendants violated their duty by using illegal robocalling in their sales process.

98. The violation proximately caused Plaintiff to incur actual damages such as nuisance and annoyance and those statutorily recognized.

99. As a result, Plaintiff has incurred damages.

100. The damages were the kind that the statute was designed to prevent.

101. Silverline, Simply and Equisolar are liable for damages caused by John Doe 1's through the vicarious liability principles pled herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Allison L. Javitch prays for the following relief:

a) An injunction requiring Defendants to cease all calls to Plaintiff;

b) An order declaring that Defendants' actions, as set out above, violate the TCPA;

c) An order declaring that Defendants' actions, as set out above, *knowingly* and *willfully* violate the TCPA;

d) An order declaring that Defendants' actions, as set out above, violate the California's Consumers Legal Remedies Act §1770(a)(22)(A);

e) An order declaring that Defendants' actions, as set out above, constitute the common law tort of negligence;

f) An award of actual and/or statutory damages and civil penalties;

g) An award of reasonable attorneys' fees and costs; and

h) Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: August 14, 2019

                                                              Respectfully submitted,

                                                              By: /s/ Mark L. Javitch               .
                                                              Plaintiff's Attorney

                                                             Mark L. Javitch (California SBN 323729)
                                                             Javitch Law Office
                                                             480 S. Ellsworth Ave.
                                                             San Mateo CA 94401
                                                              Tel: 650-781-8000
                                                             Fax: 650-648-0705

16

3:19-cv-04794